**Electronically Filed
Intermediate Court of Appeals
30285
03-NOV-2010
02:49 PM**

NO. 30285

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
KYLE F.K. CORREA, Defendant-Appellant,
and RYAN C. PEREZ, Defendant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 09-1-0208)


SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Fujise and Reifurth, JJ.)

Defendant-Appellant Kyle F.K. Correa (Correa) appeals from the Judgment of Conviction and Sentence entered on December 29, 2009 in the Circuit Court of the First Circuit (circuit court).[1] Correa was convicted by the jury on Count I, Promoting a Dangerous Drug in the Second Degree in violation of Hawaii Revised Statutes (HRS) § 712-1242 (Supp. 2009), and on Count III, Unlawful Use of Drug Paraphernalia in violation of HRS § 329-43.5(a) (1993). Correa was sentenced to ten years incarceration on Count I and five years incarceration on Count III, running concurrently, with credit for time served, and with a mandatory minimum term of two years and six months as a repeat offender.

On appeal, Correa contends that: (1) the circuit court erred by failing to instruct the jury on a choice of evils defense; (2) his conduct was justifiable under either a choice of evils defense or duress defense, and thus there is insufficient evidence to support his conviction; (3) the circuit court abused its discretion in denying Correa's motion for a mistrial based on the prosecutor's misconduct; and (4) the prosecutor committed

---

[1] The Honorable Virginia L. Crandall presided.

misconduct during his cross-examination of Correa.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Correa's points of error as follows:

## I.  The Court Did Not Err in Failing to Give a Choice of Evils Defense Instruction

Defendants have a right to jury instructions on any theory of defense that has support in the evidence, even if they fail to request it; nevertheless, defendants must overcome the presumption that an unobjected-to jury instruction is correct. *State v. Sawyer*, 88 Hawai'i 325, 333, 966 P.2d 637, 645 (1998); *State v. Nichols*, 111 Hawai'i 327, 337, n.6, 141 P.3d 974, 984, n.6 (2006). On appeal, we "ascertain whether the jury instructions given by the circuit court, *when read and considered as a whole*, are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Stenger*, 122 Hawai'i 271, 281, 226 P.3d 441, 451 (2010) (emphasis added).

The circuit court instructed the jury that Correa had raised the affirmative defense of duress,[2/] and explained that the defense had the following three elements.

---

[2/] Duress is defined in the law as follows:

> (1) It is a defense to a penal charge that the defendant engaged in the conduct or caused the result alleged because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another, which a person of reasonable firmness in his situation would have been unable to resist.
>
> .  .  .  .
>
> (4) When the conduct of the defendant would otherwise be justifiable under section 703-302, this section does not preclude the defense of justification.
>
> (5) In prosecutions for any offense described in [The Hawaii Penal] Code, the defense asserted under this section shall constitute an affirmative defense. The defendant shall have the burden of going forward with the evidence to prove the facts constituting such defense, unless such facts are supplied by the testimony of the prosecuting witness or circumstance in such testimony, and of proving such facts by a preponderance of the evidence pursuant to section 701-115.

HAW. REV. STAT. § 702-231 (1993).

2

> 1. The defendant engaged in the conduct or caused the result alleged in the Complaint because the defendant was coerced to do so by the threat to use or use of unlawful force against the defendant's person or another person;
>
> 2. The unlawful force used or threatened to be used was the type that a person of reasonable firmness in the defendant's situation would have been unable to resist;
>
> 3. The defendant did not recklessly place himself in the situation in which it was probable that the defendant would be subjected to duress.

Correa did not request that the circuit court issue a choice of evils instruction and, in fact, approved the instructions as given. Correa contends now, however, that the circuit court erred in not also providing a choice of evils instruction.

Duress and choice of evils are conceptually distinct defenses with different elements.[3] Consistent with the foregoing principles, Correa was entitled to an instruction on the choice of evils defense as long as some evidentiary support for the essential components of the defense was introduced. We examine, therefore, whether evidence was adduced below to support a choice of evils defense instruction.

The choice of evils defense requires that the defendant reasonably believe that his conduct is "*necessary* to avoid an *imminent* harm or evil to the actor or to another[.]"[4] HAW. REV.

---

[3] The United States Supreme Court explained the difference between the duress and choice of evils defenses:

> Common law historically distinguished between the defenses of duress and necessity [or choice of evils]. Duress was said to excuse criminal conduct where the actor was under an unlawful threat of imminent death or serious bodily injury, which threat caused the actor to engage in conduct violating the literal terms of the criminal law. While the defense of duress covered the situation where the coercion had its source in the actions of other human beings, the defense of necessity, or choice of evils, traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils.

*United States v. Bailey*, 444 U.S. 394, 409-10 (1980).

[4] Choice of evils is defined, in relevant part:

> (1) Conduct which the actor believes to be necessary to avoid an imminent harm or evil to the actor or to another is justifiable provided that:
>
> (a) The harm or evil sought to be avoided by such conduct is greater than that sought to be

(continued...)

3

STAT. § 703-302(1) (1993) (emphasis added). Correa contended that he was selling drugs when he was arrested in February 2009 because the drug dealer for whom he was selling, Lance Bernard (Bernard), had put a gun to the head of Correa's infant daughter in November 2008 when Correa originally objected to selling for Bernard.[5] According to Correa, he owed $8,000 - $9,000 for drugs "fronted" to him, but not paid for in approximately 2003, when Correa was last using drugs. According to Correa, he proceeded from that point to sell drugs because he was afraid that Bernard "was going to hurt [his daughter]."

There was no evidence, however, that Correa or his daughter were under an imminent threat of harm when Correa was arrested in February 2009, or at any time since the November 2008 incident. Correa conceded that he could have borrowed the money to repay Bernard from his mother, his father, or his sister, but he did not because he was ashamed and scared. In addition, rather than sell all of the drugs that Bernard was providing him, thus paying Bernard off sooner and "get everything over with[,]" Correa began taking out a portion of each delivery for his own use.

Since the essential elements of the choice of evils defense are missing from the evidence, Correa failed to present sufficient evidence to overcome the presumption that the Court's unobjected-to jury instructions were correct. Although sufficient evidence was presented to support giving a duress

---

[4] (...continued)

> prevented by the law defining the offense charged[.]

HAW. REV. STAT. § 703-302(1)(a) (1993).

Furthermore, "In this chapter, unless a different meaning is plainly required: 'Believes' means reasonably believes." HAW. REV. STAT. § 703-300 (1993).

[5] According to Correa, he and Bernard had gone out for the evening to Waipio where they "drank, sang karaoke, and just talked story and cruised." Thereafter, Correa drove himself and Bernard back to Correa's home. Correa went into his house and retrieved his daughter because he heard her crying. Correa brought his daughter with him, back into his truck, and "showed [Bernard] my daughter." At that point, Bernard reached into his pocket, grabbed a bag of crystal methamphetamine, and threw it on Correa's lap, saying "About the money that you owe." When Correa objected, Bernard "held a gun to my daughter's head."

4

defense, there was no evidence adduced to support giving an instruction on choice of evils. *C.f. State v. Ortiz*, 93 Hawai'i 399, 408, 4 P.3d 533, 542 (App. 2000) (sufficient evidence to support choice of evils instruction, but insufficient to require giving duress instruction).

In addition, there is no reasonable possibility that the jury, having rejected the duress defense which, as applied to the facts of this case, incorporates no specific imminency requirement, could have found Correa's conduct justified under a choice of evils defense. As a result, the circuit court's failure to instruct the jury on a choice of evils defense, unobjected to by the defense, is not reversible error.

## II. There Was Sufficient Evidence to Support Correa's Conviction, And Correa's Conduct Was Not Justified Under Either the Duress or Choice of Evils Defense

In his second point of error, Correa contends that his conduct was justifiable under either a duress or choice of evils defense. As discussed above, a choice of evils defense was unwarranted under the circumstances. The remaining question then is whether there was substantial evidence to support the jury's conclusion that Correa did not prove duress. For reasons similar to those discussed above with regard to the choice of evils defense, we conclude that there was substantial evidence to support the jury's verdict and its implicit conclusion that duress had not been proven.

Evidence established that Bernard threatened Correa once, in November 2008, and that he had not reiterated that threat prior to Correa's arrest in February 2009. Evidence further established that Correa understood that Bernard's threat related to an unpaid debt that had existed since approximately 2003, and that Correa had the wherewithal to pay off the debt without undertaking to sell Bernard's drugs. According to Correa, he and Bernard never again discussed Correa's debt or the degree to which Correa had paid it off or down over the intervening months.

"[E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction. . . . The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact." *State v. Batson*, 73 Haw. 236, 248, 831 P.2d 924, 931 (1992) (citations omitted). The evidence adduced here at trial, when viewed in this light, was sufficient for the jury to conclude that Correa had failed to prove that he was possessing and selling drugs in February 2009 "because he was coerced to do so by the use of, or a threat to use, unlawful force against his person or the person of another[.]" HAW. REV. STAT. § 702-231(1).

### III. The Court Did Not Abuse Its Discretion in Denying Correa's Motion for a Mistrial Where the Basis for The Motion Was Correa's Allegation of Prosecutorial Misconduct

Correa contends that the prosecutor committed misconduct when, while cross-examining Correa, the prosecutor questioned him as to when he first started selling "meth" and responded to defense counsel's objection by stating "Okay. Let's not talk about any prior instances."

Correa argues that the effect of the prosecutor's misconduct was to portray Correa as a long-time drug dealer, and that this "directly affected the jury's assessment of Correa's defense . . . [and] deprived Correa of his right to a fair trial[.]" Correa moved for a mistrial, which was denied.[6] In

---

[6]    The motion and the court's ruling arose as follows:

> Q.    [Prosecutor]:  So tell us, when was your first sale of meth?
>
> [Defense counsel]:  I'm going to object, your Honor, as to relevance.
>
> [Prosecutor]:  It goes to --
>
> THE COURT:  Overruled.
>
> [Prosecutor]:  Thank you.
>
> [Co-defendant's counsel]:  Your Honor, there should be a time frame.

(continued...)

his third point of error, Correa contends that the circuit court

---

6/ (...continued)

> THE COURT:  From October of 2008.
>
> Q.     [Prosecutor]:  Okay.  Let's not talk about any prior instances.  Let's talk about --
>
> [Defense counsel]:  I'm going to object to the form of the question.
>
> THE COURT:  Sustained.
>
> [Defense counsel]:  Ask that the question be stricken and he be cautioned not to make that sort of accusation.
>
> THE COURT:  Correct, [Prosecutor].
>
> [Co-defendant's counsel]:  Your Honor, can we approach the bench, please?
>
> THE COURT:  Yes.
>
> (A bench conference was had on the record as follows:)
>
> [Co-defendant's counsel]:  Your Honor --
>
> [Defense counsel]:  I'll make a motion for mistrial at this point with that question.  It made the implication that my client has dealt drugs for a long period of time, and I think that's outrageous.  I don't think the jury should have heard a question like that, and I'd ask for that -- that you grant a mistrial.
>
> [Co-defendant's counsel]:  Your Honor, unfortunately I feel like I'm obligated to join in the motion, as well. . . .
>
> [Prosecutor]:  Your Honor, my response is that -- my intention in asking the question was in response to I'm not going to talk about anything else, I just want to talk about in relation to this duress issue.  But I've got to understand how I did come across.  But, nevertheless, I do apologize to Defense counsel for the way it came out.  But I still don't believe it rises to the level of manifest injustice to warrant a mistrial at this juncture.  And I do intend to cure it with my further questioning.
>
> THE COURT:  Court denies the motion for mistrial.  The jury's been instructed to disregard and follow the Court's instructions.  And the reason that the Court had overruled the objection was because it was relevant to the duress defense in terms of when he was asked when was the first time, and that's relevant with respect to the relevant time frame of this case, which is why the Court said October 2008; then [Prosecutor] did not need to make his comment, which has been stricken, he's been admonished in front of the jury, and they will disregard that.  But the first time he sold in relation to the affirmative defense of duress is relevant.

abused its discretion in denying Correa's motion for mistrial.

The denial of a motion for mistrial is within the sound discretion of the trial court and will not be upset absent a clear abuse of discretion. *State v. Loa*, 83 Hawai'i 335, 349, 926 P.2d 1258, 1272 (1996). "'The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.'" *State v. Rogan*, 91 Hawai'i 405, 411, 984 P.2d 1231, 1237 (1999) (*quoting State v. Ganal*, 81 Hawai'i 358, 373, 917 P.2d 370, 385 (1996).

Additionally, trial errors are not viewed in isolation. Rather, an error "must be examined in light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction." *State v. Haili*, 103 Hawai'i 89, 100, 79 P.3d 1263, 1274 (2003) (quoting *State v. Heard*, 64 Haw. 193, 194, 638 P.2d 307, 308 (1981).

In this case, there was overwhelming and compelling evidence to prove Correa's guilt beyond a reasonable doubt. Moreover, immediately after the defense objected to the prosecutor's comment about when Correa started selling methamphetamine and "prior instances", the circuit court sustained the objection, struck the question, and cautioned the prosecutor about the form of the question. *See State v. Wakisaka*, 102 Hawai'i 504, 516, 78 P.3d 317, 329 (2003) ("Generally, we consider a curative instruction sufficient to cure prosecutorial misconduct because we presume that the jury heeds the court's instruction to disregard improper prosecution comments."). Given the overwhelming amount of evidence against Correa, there is no reasonable possibility that the prosecutor's single question and related comment contributed to Correa's conviction or prejudiced Correa. As a result, the Court did not abuse its discretion in denying the defense's motion for a mistrial.

## IV. The Prosecutor Did Not Engage in Misconduct During His Cross-Examination of Correa

Correa argues that the prosecutor's questions during cross-examination, referred to above, were "designed to elicit highly prejudicial responses that portrayed him as a high-level, long-time drug dealer."

"Allegations of prosecutorial misconduct are reviewed under the harmless beyond reasonable doubt standard, which requires an examination of the record and a determination of 'whether there is a reasonable possibility that the error complained of might have contributed to the conviction.'" *Rogan*, 91 Hawai'i at 412, 984 P.2d at 1238 (quoting *State v. Balisbisana*, 83 Hawai'i 109, 114, 924 P.2d 1215, 1220 (1996)). There are three factors to be considered in reviewing a claim of prosecutorial misconduct. First, "the nature of the prosecutor's misconduct," second, "the promptness of a curative instruction or lack of it," and third, "the strength or weakness of the evidence against the defendant." *State v. Samuel*, 74 Haw. 141, 148, 838 P.2d 1374, 1378 (1992).

In this case, the prosecutor stated, "Okay. Let's not talk about any prior instances." The defense immediately objected to the form of the question. During a subsequent bench conference, the prosecutor explained that the question was intended to address the defense's claim of duress. The prosecutor went on to ask only about sales transactions that occurred after October 2008.[2] For example, Correa was asked "how many baggies would you say you sold between October 2008 and February, when you were arrested?"

"Once having taken the witness stand in his behalf, the defendant may be cross-examined on collateral matters bearing upon his credibility, the same as any other witness." *State v.*

---

[2] Correa's misconduct argument references two segments of the prosecutor's cross-examination. The first segment is described above in relation to Correa's third point of error (the circuit court's denial of Correa's motion for mistrial). The second segment incorporated more detailed questions about the sales conducted by Correa from November 2008 to the time of his arrest. Correa made no objection to this second set of questions. In the absence of an objection, we review for plain error. *State v. Wakisaka*, 102 Hawai'i at 513, 78 P.3d at 326 (2003). Because the prosecutor's questions related directly to Correa's defense of duress, we find no error.

*Napulou*, 85 Hawai'i 49, 57, 936 P.2d 1297, 1305 (App. 1997) (internal quotation marks and brackets omitted) (quoting *State v. Pokini*, 57 Haw. 17, 22, 548 P.2d 1397, 1400 (1976). Taken in context, the prosecutor's questions related to Correa's affirmative defense and did not exceed the scope of permissible conduct.

Consequently, the prosecutor's cross-examination did not constitute misconduct.

**V.    Conclusion**

For the foregoing reasons, the circuit court's December 29, 2009 Judgment of Conviction and Sentence is affirmed.

DATED:  Honolulu, Hawai'i, November 3, 2010.

On the briefs:

Jeffrey A. Hawk
(Hawk Sing Ignacio & Waters)
for Defendant-Appellant.

Presiding Judge

Associate Judge

Stephen K. Tsushima,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

Associate Judge